MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
Assistant United States Attorney

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: hartley.west@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br>       Plaintiff, ) <br>   v. ) <br> LOUIS LOMBARDI, ) <br>       Defendant. ) | No. CR 11-0785 SBA <br><br> PLEA AGREEMENT |

     I, Louis Lombardi, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written plea agreement (the "Agreement") pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

     1.   I agree to plead guilty to the captioned Information charging me with the following offenses:

Counts One Through Four

     Counts One through Four charge me with deprivation of rights under color of law, in violation of 18 U.S.C. § 242. I agree that the elements of this offense are: (1) I knowingly and willfully subjected a person in the State of California to the deprivation of a right, privilege, or

PLEA AGREEMENT
[CR 11-0785 SBA]

immunity secured or protected by the Constitution or laws of the United States; and (2) I acted under color of law, statute, ordinance, regulation, or custom in so doing. I agree that the maximum penalties are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison sentence | | 1 year |
| b. | Maximum fine gain or loss, whichever is greater) | | $100,000 (or twice the gross |
| c. | Maximum supervised release term | | 1 year |
| d. | Mandatory special assessment | | $100 (per count) |
| e. | Restitution | | Determined by Court |

Count Five

Count Five charges me with conspiracy to maintain drug-involved premises, in violation of 21 U.S.C. §§ 846 and 856(a)(1) and (b). I agree that the elements of this offense are: (1) There was an agreement between two or more persons to open, lease, rent, use, or maintain a place, permanently or temporarily, for the purpose of manufacturing a controlled substance, specifically marijuana; and (2) I joined in the agreement knowing of its purpose and intending to help accomplish that purpose. I agree that the maximum penalties are as follows:

| | | |
|---|---|---|
| a. | Maximum prison sentence | 20 years |
| b. | Maximum fine | $500,000 |
| c. | Maximum supervised release term | 5 years |
| d. | Mandatory special assessment | $100 |
| e. | Forfeiture | |

Count Six:

Count Six charges me with conspiracy to possess with intent to distribute, and to distribute, a Schedule I controlled substance, to wit: marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D). I agree that the elements of this offense are: (1) There was an agreement between two or more persons to distribute marijuana; and (2) I joined in the agreement knowing of its purpose and intending to help accomplish that purpose. I agree that the maximum penalties are as follows:

|   |    |                                    |           |
|---|----|------------------------------------|-----------|
| a. |   | Maximum prison sentence            | 5 years   |
| b. |   | Maximum fine                       | $250,000  |
| c. |   | Maximum supervised release term    | 3 years   |
| d. |   | Mandatory special assessment       | $100      |
| e. |   | Forfeiture                         |           |
| f. |   | Mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. §§ 862 and 862a | |

Count Seven

Count Seven charges me with possession with intent to distribute and distribution of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). I agree that the elements of possession with intent to distribute marijuana are: (1) I knowingly possessed marijuana; and (2) I possessed it with the intent to deliver it to another person. I agree that the elements of distribution of marijuana are: (1) I knowingly distributed marijuana; and (2) I knew that it was marijuana or some other prohibited drug. I agree that the maximum penalties are as follows:

|   |    |                                    |           |
|---|----|------------------------------------|-----------|
| a. |   | Maximum prison sentence            | 5 years   |
| b. |   | Maximum fine                       | $250,000  |
| c. |   | Maximum supervised release term    | 2 years   |
| d. |   | Mandatory special assessment       | $100      |
| e. |   | Forfeiture                         |           |
| f. |   | Mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. §§ 862 and 862a | |

Count Eight

Count Eight charges me with possession with intent to distribute and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). I agree that the elements of possession with intent to distribute methamphetamine are: (1) I knowingly possessed methamphetamine; and (2) I possessed it with the intent to deliver it to another person. I agree that the elements of distribution of methamphetamine are: (1) I knowingly distributed methamphetamine; and (2) I knew that it was methamphetamine or some other prohibited drug.

I agree that the maximum penalties are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison sentence | | 20 years |
| b. | Maximum fine | | $1,000,000 |
| c. | Maximum supervised release term | | 3 years |
| d. | Mandatory special assessment | | $100 |
| e. | Forfeiture | | |
| f. | Mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. §§ 862 and 862a. | | |

Count Nine

Count Nine charges me with possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). I agree that the elements of this offense are: (1) I knowingly and intentionally received, possessed, concealed, stored, bartered, sold, or disposed of a stolen firearm; (2) the firearm had been transported from one state to another; and (3) I knew or had reasonable cause to believe that the firearm was stolen. I agree that the maximum penalties are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison sentence | | 10 years |
| b. | Maximum fine | | $250,000 |
| c. | Maximum supervised release term | | 3 years |
| d. | Mandatory special assessment | | $100 |
| e. | Forfeiture | | |

2. I agree that I am guilty of the offenses to which I will plead guilty, and I agree that the following facts are true:

I was an officer with the San Ramon Police Department from July 1, 2007, until my termination on May 5, 2011. From June 2005 to June 2009, I was assigned to the Central Contra Costa County Narcotics Enforcement Team (CNET), located in Pleasant Hill. CNET was a regional task force operated by the California Department of Justice, Bureau of Narcotics Enforcement. Throughout my tenure at CNET, I was supervised by CNET's commander, Norman Wielsch.

///

<u>Deprivation of Rights – Thefts from Searches</u>

Beginning in at least early 2008 and continuing through at least November 2010, under color of law, I developed and carried out a scheme to knowingly and willfully deprive persons in the State of California of their rights against unreasonable searches and seizures and their rights against deprivation of property without due process of law. Specifically, I planned to and did steal money and property during searches that I performed in my role as a law enforcement officer with CNET and with the San Ramon Police Department.

In carrying out this scheme, I stole at least $40,000 in cash, as well as jewelry, narcotics, and other items. I admit stealing money and property on at least fifteen to twenty occasions from searches of illicit massage parlors, and on at least ten occasions from probation and parole searches. I also admit stealing money and property during the executions of search warrants, including the following:

- On or about March 20, 2008, I stole approximately $1,000 during a search of the home of an individual identified in Count One of the Information as J.B.
- On or about November 13, 2008, I stole approximately $3,000 during execution of a search warrant in Pittsburg, California, related to members of the "Deep C" gang, as referenced in Count Two of the Information.
- On or about December 1, 2008, I stole a bottle of Woodford whiskey during the execution of a federal search warrant at the Broken Wheel Bar, and a pair of sunglasses from an associated search of the home of an individual identified in Count Three of the Information as O.O.
- On or about November 5, 2010, I stole jewelry, specifically chains and a ring, during a search of the home of an individual identified in Count Four of the Information as A.G. I understand and admit that the City of San Ramon settled this claim by A.G. for $7,500 in regard to this jewelry.

<u>Conspiracy to maintain drug-related premises/Marijuana offenses</u>

From approximately May 2009 through approximately late 2010, I knowingly and intentionally agreed with others to open, use, and maintain a place for the purpose of growing

PLEA AGREEMENT
[CR 11-0785 SBA]                                     5

marijuana, as charged in Count Five of the Information. During this same time period, I also knowingly and intentionally agreed with others to possess with intent to distribute and to distribute a mixture and substance containing a detectable amount of marijuana, as charged in Count Six of the Information. I admit that we conspired to sell, and conspired to maintain the premises for growing, at least 250 grams but less than one kilogram of marijuana.

Specifically, in or about May 2009, I met with CNET commander Norman Wielsch and a private investigator, Chris Butler, at a restaurant called Kinder's Barbecue, in the Northern District of California. At this meeting, I said that Butler could lawfully obtain a permit to grow marijuana because he was not a law enforcement officer, and that I knew another individual who could sell the marijuana in Arizona, where it could get a higher price. Both Wielsch and Butler agreed, and we discussed possible locations for the grow. I thereafter proposed the marijuana grow to my contact in Arizona, whose role would be to handle sales, and to another person, whose role would be care for the grow site. These individuals also agreed to participate.

In furtherance of this agreement, sometime after the Kinder's meeting, Butler showed Wielsch and me a couple of bags of marijuana in his garage that he suggested we sell. Based on my knowledge of marijuana and previous sale attempts, I advised Butler and Wielsch that the marijuana quality was too poor for my contact in Arizona to sell. In approximately late 2009 or 2010, however, after I left CNET, Wielsch gave me a half-pound of good marijuana to sell. I sent the marijuana by UPS to my contact in Arizona. I received partial payment from this contact, which I gave to Wielsch. I knowingly and intentionally possessed the marijuana with the intent to deliver it to another person, and knowingly and intentionally distributed the marijuana, as charged in Count Seven of the Information.

<u>Possession with Intent to Distribute and Distribution of Methamphetamine</u>

On or about May 25, 2010, I knowingly and intentionally possessed methamphetamine with the intent to deliver it to another person, and knowingly and intentionally distributed the methamphetamine, as charged in Count Eight of the Information. Specifically, on May 25, 2010, Wielsch and I took approximately two ounces (56.69 grams) of methamphetamine that had been purchased through a CNET confidential informant, sold that methamphetamine back to the

1  informant, and split the proceeds.

2  <u>Possession of a Stolen Firearm</u>

3  In approximately February 2011, I knowingly and intentionally possessed, stored, and
4  disposed of a stolen firearm, which had previously been transported in interstate commerce,
5  knowing and having reasonable cause to believe that the firearm was stolen. Specifically, Butler
6  had given me a Smith & Wesson 9mm [.22 struck through] pistol as payment for surveillance work on behalf of his
7  private investigation firm. At some point after giving me the gun, Butler told me it was stolen
8  and that I should not sell it. Shortly after Butler and Wielsch were arrested in February 2011, I
9  disposed of the gun by throwing it into the Discovery Bay delta. I agree that the Smith &
10 Wesson 9mm [.22 struck through] is manufactured in Massachusetts.

11 I admit that I knowingly and intentionally possessed and concealed two stolen firearms
12 from approximately August 2008 through on or about May 4, 2011. In August 2007, I used
13 CNET funds to buy two stolen firearms from a confidential informant – a Charter Arms
14 'Pathfinder' .22 caliber revolver, serial number 398329, and a Glenfield model 25 .22 caliber
15 rifle, serial number 72368152. I completed paperwork logging both guns into the Contra Costa
16 County Property Room for destruction, but instead of depositing the guns, I placed them in a lock
17 box in the back of my car. Approximately one year later, in or about August 2008, I knowingly
18 and intentionally put the stolen guns in my bedroom closet. Law enforcement officers found
19 these guns in my closet on May 4, 2011, when I was arrested on state drug conspiracy charges
20 (among other things). I admit that both guns were manufactured in Connecticut.

21 I further admit that I did not possess these firearms solely for lawful sporting purposes or
22 collection.

23 3. I agree to give up all rights that I would have if I chose to proceed to trial,
24 including the rights to a jury trial with the assistance of an attorney; to confront and
25 cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or
26 raise any other Fourth or Fifth Amendment claims; to any further discovery from the
27 government; and to pursue any affirmative defenses and present evidence. I also agree to waive
28 venue, if necessary, based on the charges filed in this case.

PLEA AGREEMENT
[CR 11-0785 SBA]                                    7

4. I agree to give up my right to appeal my conviction, the judgment, and orders of the Court. I also agree to waive any right I may have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at any time in the future after I am sentenced, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea. I understand that the government will not preserve any physical evidence obtained in this case.

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. I understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including at trial, in the event I move to withdraw my guilty plea to the charges in the Information, and (b) I expressly waive any and all rights under Fed. R. Crim. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of this Agreement in such subsequent proceeding.

7. I agree that the Court will use the Sentencing Guidelines to calculate my sentence. I understand that the Court must consult the Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound by the Guidelines calculations below, the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask to withdraw my guilty plea. I agree that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea. I also agree that the Sentencing Guidelines range will be calculated as follows and that, other than seeking a possible downward departure pursuant to U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e) as contemplated in Paragraphs 12 and 13 of this Agreement, I will not ask for any other adjustment to or reduction in the offense level or for a downward departure or variance from the Guidelines range as determined by the Court. The parties have reached no agreement regarding my Criminal History Category.

Drug Trafficking Offenses

a. Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5) and (c)(7): 26

b. Adjustments:
Abuse of position of trust, § 3B1.3 +2

c. Adjusted Offense Level 28

Maintaining Drug Premises

a. Base Offense Level, U.S.S.G. §§ 2D1.8(a)(1), 2D1.1(16): 8

b. Adjustments:
Aggravating role, § 3B1.1(a) +4
Abuse of position of trust, § 3B1.3 +2

c. Adjusted Offense Level 14

Deprivation of Rights

a. Base Offense Level, U.S.S.G. § 2H1.1(a)(1):
Based on underlying offense level:
Base, § 2B1.1(a)(2) 6
Loss value >$30,000, § 2B1.1(b)(1)(D) +6
>10 victims, § 2B1.1(b)(2)(A) +2

14

b. Special Offense Characteristics:
Under color of law, § 2H1.1(b)(1) +6

c. Adjusted Offense Level 20

Firearm

a. Base Offense Level, U.S.S.G. § 2K2.1(a)(7) 12

b. Special Offense Characteristics:
Three firearms, § 2K2.1(b)(1)(A) +2

c. Adjusted Offense Level 14

Grouping, §§ 3D1.2, 3D1.4

Group I (Narcotics offenses)     Offense level 28     1 unit
Group II (Civil rights offenses)  Offense level 20     ½ unit
Group III (Gun offense)           Offense level 14     0 units
                                                       1 ½ units    +1

Grouped Offense Level 29

      d.      Acceptance of Responsibility: If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.   -3

      e.      Adjusted Offense Level:   26

8. I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offenses and the sentencing decision. I agree that, based on the nature of the offensse, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

<u>Special Condition (Searches)</u>

The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time with or without cause. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

9. I agree to pay restitution for all the losses caused by all the schemes or offenses with which I was charged in this case, and I agree that the amount of restitution will not be limited to the loss attributable to the counts to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree that the Court may order and I will pay restitution in the amount of $7,500 to the City of San Ramon. I further agree that the Court may order and I will pay a fine in the amount of $150,000. I agree that any fine, forfeiture, or restitution imposed by the Court against me will be immediately due and payable and subject to immediate collection by the government and I understand that the government may seek immediate collection of the entire fine, forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office. I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. Before or after sentencing, I will upon request of the Court, the government, or the Probation Office, provide accurate and complete financial

PLEA AGREEMENT
[CR 11-0785 SBA]      10

information, submit sworn statements and give depositions under oath concerning my assets and my ability to pay, surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine, forfeiture, or restitution. I agree to pay the special assessment at the time of sentencing.

10. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree not to have any contact with any victims or witnesses in this case, either directly or indirectly, before and after I am sentenced. This includes, but is not limited to, personal contact, telephone, mail, or electronic mail contact, or any other written form of communication, and includes any harassing, annoying, or intimidating conduct by me directed to any victims or witnesses. I agree that the Court may also include this no-contact provision as a condition of my supervised release term. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty plea.

11. I agree to abandon any interest that I may have and consent to the forfeiture, destruction, and/or any other lawful and appropriate disposition of the following firearms, which were involved in a violation of 18 U.S.C. § 924(j): (1) Charter Arms 'Pathfinder' .22 caliber revolver, serial number 398329, and (2) Glenfield model 25 .22 caliber rifle, serial number 72368152.

12. I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

    a. I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury or at any trial or other proceeding;

    b. I will provide all documents and other material asked for by the government;

PLEA AGREEMENT
[CR 11-0785 SBA]                                11

  c. I will testify truthfully at any grand jury, court or other proceeding as requested by the government;

  d. I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;

  e. I will request continuances of my sentencing date, as necessary, until my cooperation is completed;

  f. I will not reveal my cooperation, or any information related to it, to anyone without prior consent of the government.

  g. I will participate in undercover activities under the supervision of law enforcement agents or the U.S. Attorney's Office.

13. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the Government's Promises section below, is based on its sole and exclusive decision as to whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

14. If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c) I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations period has run between the date of this Agreement and the date I am indicted.

15. I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future.

16. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

PLEA AGREEMENT
[CR 11-0785 SBA]        12

The Government's Promises

17. The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation that led to the pending Information, except charges relating to an act of physical violence against the person of another, or conspiracy to commit such an act.

18. The government agrees to recommend the Guidelines calculations set out above.

19. If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

20. Based on the information now known to it, the government will not oppose a downward adjustment of three levels for acceptance of responsibility under U.S.S.G. § 3E1.1 provided that the defendant forthrightly admits his guilt, cooperates with the Court and the Probation Office in any presentence investigation ordered by the Court, and continues to manifest an acceptance of responsibility through and including the time of sentencing.

The Defendant's Affirmations

21. I confirm that I have had adequate time to discuss this case, the evidence, and this Agreement with my attorney, and that he has provided me with all the legal advice that I requested.

22. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

///
///
///
///
///

23. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 1-26-12

_____
LOUIS LOMBARDI
Defendant

MELINDA HAAG
United States Attorney

Dated: 1/26/12

_____
HARTLEY M. K. WEST
Assistant United States Attorney

I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights he is giving up by pleading guilty, and, based on the information now known to me, his decision to plead guilty is knowing and voluntary.

Dated: 1/26/12

_____
DIRK MANOUKIAN
Attorney for Defendant

PLEA AGREEMENT
[CR 11-0785 SBA]                                        14